JUDGE LINDSAY
delivered the opinion of the court.
In May, 1862, Augustine C. Wells purchased from W. W. Robb a tract of two hundred and seven acres of land situated in Mason County. The price agreed to be paid therefor was sixteen thousand five hundred dollars, to be paid in three equal installments, due respectively on the 12th of October in the years 1862, 1863, and 1864.
The first payment was made and accepted on the day it became due, and Wells at the same time executed his notes for the deferred payments, in each of which the following provision was incorporated: “This note is not to be paid in Confederate or United States treasury notes, unless current and at par.”
A few days after the maturity of the first note Wells paid it off in currency, and it was surrendered by Robb to him. In the month of December thereafter Robb brought this suit on the law side of the docket, alleging that he was induced to accept the currency from and surrender the note to Wells by reason of an agreement upon the part of the latter that he would make good the difference between the actual value of the currency and gold coin at the time it was received, such difference to be subsequently determined by arbitrators to be selected by the parties. He further charges that Wells had refused to perform his part of this agreement to his great damage, and he prayed judgment against him for twenty-seven hundred and fifty dollars, the amount he was entitled to receive under the conditions of the violated agreement.
Wells by his answer denied that any such agreement had been made, and claimed that Robb willingly accepted the amount paid him in legal-tender notes in full satisfaction of his debt, and freely and unconditionally surrendered to him the note in question.
Pending the litigation the remaining note matured, and Wells claims that on the day it became due he tendered to *29 appellee the full amount thereof in United States legal-tender notes, which the latter refused to accept.
In April, 1865, Robb filed an amended petition, setting up this last-named note, and claiming that by its terms he had the right to demand payment in gold coin, and he prays for a specific execution of the contract as construed by his said amended petition.
Wells, by his answer, denied Robb’s right to have the note paid in other than lawful money of the United States, pleaded his tender in the country, alleged that he had at all times been ready and willing to make payment in lawful money, and with his answer renewed his offer to pay in the manner aforesaid, and proposed to pay into court the amount appellee had the right to demand in legal-tender notes. This offer was again refused; whereupon the court directed the currency tendered to be deposited in “the Maysville Branch of the Farmers’ Bank of Kentucky, to the credit of the Mason Circuit Court, to be drawn therefrom only on the order of the court, or by the plaintiff if he shall accept the same as tendered.” The cause was then transferred to the equity side of the docket.
During the same term, upon the motion of Robb, the court made an order authorizing him to withdraw from the Farmers’ Bank the legal-tender notes theretofore deposited in such bank. The order recited that he should not be prejudiced by the acceptance and appropriation of the amount so withdrawn, and the court reserved to itself full power over all questions involved in the litigation. To this action of the court Wells excepted; but, notwithstanding his objections, Robb availed himself of the privilege granted him and withdrew the money from the bank.
Upon final hearing judgment was rendered against the personal representative of Wells, who had died pending the suit, for the sum of $1,849.84, balance on note due October 1, *30 1863, with interest from that date, and ior the further sum of $2,016.66, with interest from the 20th of April, 1865, as a balance on the last note, the court directing that the two judgments might be discharged in currency at its gold value. This appeal is prosecuted to reverse these judgments.
As to the first note, the fact that appellee surrendered it to Wells when the currency was paid to him raises the presumption that he accepted the money paid in full discharge of his debt. If it was agreed at the time that' the difference in the market value of the legal-tender notes and gold was afterward to be made good by his debtor, the most natural course for him to have pursued under the circumstances would have been to receipt to Wells for the amount of currency received, or to credit such amount on the note and retain it in his possession as an evidence of the fact that it had not been fully satisfied.
This presumption is attempted to be rebutted by proof of certain statements made by Wells. One witness details with some minuteness a conversation, in which Wells admitted that he had agreed with Eobb to submit to arbitrators the question as to whether he was legally bound to pay the note in coin or its equivalent.
It seems, however, that the impressions made upon the mind of this witness were' as much the result of his frequent conversations with Eobb, who had selected him as one of the proposed arbitrators, as of any thing said to him by Wells.
Upon cross-examination it appears that he can not recollect the language used by either of the litigants when speaking of the agreement to arbitrate, but says that the idea that such was their agreement was conveyed to him by each of them. It is to be observed that the admissions supposed to have been made by Wells were parts of a conversation had with this witness when there was no one else present; that the witness is the friend of Eobb; that he had agreed to act as his repre *31 sentative in the settlement of the matters in dispute, and had manifested his partiality towardfhim by expressing in advance an opinion as to the merits of the controversy favorable to his interests.
We can not concur with the circuit coui’t that such testimony is sufficient to rebut the presumption of payment raised by the surrender of the note.
It next becomes necessary to determine the legal effect of the withdrawal by Robb of the money deposited by the court in the Farmers’ Bank.
This currency was paid into court as lawful money, Wells insisting that he had the legal right to discharge his indebtedness to Robb in such money. The appellee did not controvert the fact that the proper amount had been tendered, but claimed that by the terms of his contract he had the right to demand payment in coin. He refused to accept the tender not because Wells owed him a greater sum than the legal-tender notes represented, but because of his supposed right to demand payment in a different kind of money.
So long as the legal-tender notes remained in the hands of the court or of its agent, the Farmers’ Bank, they constituted a standing and continuous offer to Robb, which he had the option at any time to accept “ as tendered.” But he could not of his own volition take and appropriate such notes upon any other conditions than those upon which the tender was made. Nor had the court the power to change or modify these conditions. If it should finally be adjudged that the tender was sufficient in law, appellant Avould be entitled to his costs, and the title to the money on deposit would be vested in Robb. Upon the other hand, if the coui-t should adjudge that Robb was entitled to have his note paid in gold coin, a judgment specifically enforcing his contract Avould be rendered, and Wells would have the right to withdraw from the hands of the court the legal-tender notes on deposit.
*32 The rule is different where there is no controversy as to the character of the money tendered; but where the plaintiff claims a larger amount than the defendant concedes to be due, in such cases _the tender establishes the liability of the party sued for the amount tendered, and the plaintiff has the right to accept that amount as a payment pro tanto, and continue the litigation for the balance claimed, he' being responsible for costs subsequently accruing in case he fails to recover judgment for such balance, or some part thereof.
Here it was all the while within the power of Robb to waive his objection to the character of the money tendered and accept it in satisfaction of his debt; but as it was lawful money, as held recently by the Supreme Court of the United States (Knox v. Lee and Parker v. Davis), it was not within the power of the circuit court to permit him to take possession of it as property and account to appellant for its value in coin, nor to compel the latter to pay it out upon any debt for less than its face-value.
As the unauthorized order of court under which Robb obtained possession of the money, tendered was made at his instance, and contrary to the objections of his debtor, he occupies no better attitude than he would have done if he had withdrawn the money from the bank, as he had the right to do under the order directing the deposit to be made. He must be held to have waived objection to the character of the money tendered, and to have accepted it as a payment of his debt. Any other conclusion would give force and effect to the order of court, which we have already decided was unauthorized.
Appellee insists, however, that there is no proof of the alleged tender in the country, and that in any event he should have judgment for the interest which had accrued on the note up to the time of the tender in court. It is a sufficient answer to this claim that the order of the circuit court shows that the offer of the money in court was made pursuant to the *33 tender alleged to have been made on the day the note fell due, and that the money was to be drawn from the bank only on the order of the court, or by the plaintiff should he accept it as tendered. As has already been held, he did accept it as tendered, and thereby satisfied his debt, and rendered proof of the tender in the country wholly unnecessary.
For these reasons it seems to us that the judgments appealed from are each erroneous. They are therefore reversed, and the cause remanded, with instructions to dismiss original and amended petitions.